BAKER, JUDGE:
Claimant, Earnest M. Pándelos, owner and operator of the Esquire Supper Club, Inc., *104 seeks an award from the Division of Highways for property damage sustained by flood water alleged to have flowed from West Virginia Route 88 near Bethlehem in Ohio County, West Virginia.
From the evidence adduced at the hearing on November 18,1992, it appears that for several years the claimant has suffered damage to his real property from water washing down and alongside Route 88 during heavy rainstorms. The water has flooded the parking lot and, on occasion, the restaurant. According to claimant, most of the damage occurred when the property flooded during storms on June 21,1989, and June 17,1991, although there may be some question about the latter date, a storm depositing five and one-half inches of rain in less than an hour having hit the area on June 14, 1990.
The claimant seeks damages from June 21, 1989, to the present, in the amount of $11,123.00. However, the statute of limitations for property damage is two years; therefore, the Court will consider the damages from the flooding occurring on and after September 30,1989, two years prior to the date this claim was filed.
The claimant has owned and operated Ernie’s Esquire Supper Club since 1956. The restaurant is located on the south side of route 88, which descends from west to east at approximately a 6.25% grade. As it passes claimant’s property Route 88 is superelevated from south to north, away from claimant’s property, but claimant has paved respondent’s property between the paved portion of Route 88 proper and the entrance to his supper club. Respondent has five drop inlets, catch basins or culverts in a drainage ditch above the elevation of claimant’s property, on the south side of Route 88, and claimant has installed three such drop inlets on his property which tie into respondent’s drainage system. Claimant’s parking area and supper club are some eighteen feet below the level of Route 88 as it joins the entrance to claimant’s property.
Water from the highway started flowing onto claimant’s property in 1989 when sticks and rubbish blocked the culverts on Route 88. However, the flow of water from his drainage structure carries debris onto claimant’s property and a large drop inlet adjacent to claimant’s property also becomes clogged and the water flows over the drop inlet onto the asphalt parking areas on the property. Claimant alleges that this water caused deterioration of the asphalt on the parking lots for the restaurant which claimant had to repave at a total cost of $14,265.00, of which $8,231.00 is the portion attributable to the water damaged areas. Claimant also alleges that the drains on the parking lots became clogged with debris from water flowing from the State road causing flooding in the kitchen of the restaurant. There were three instances of flooding of his nature which also added to the damages in this claim
Charles Garvick, an expert in the field of engineering, testified that he viewed the site and talked with the claimant. He determined that the water was coming from the highway and not from the small creek behind the property. He also stated that even if the claimant’s drains are tied into the respondent’s culvert, the fact that claimant’s drains are lower than the respondent’s drains would not cause them to back up. He testified that it is his opinion that the water problems are caused by the respondent’s lack of maintenance of the culvert. He stated that the claimant’s *105 restaurant is located at the bottom of a basin and that it would be important in reaching a determination of how much water collects in the area to perform a drainage analysis on the area; however, he did not perform such an analysis.
Respondent contends that the excess water on claimant’s property flows from the hillside which surrounds the property and not just from Route 88. The drainage structures on the State road are cleaned on an annual basis which is the normal, routine schedule for respondent in Ohio County. IN 1990, respondent installed new head walls in the area. Gordon Peake, maintenance engineer for the respondent, testified that he had investigated the area several times after telephone calls were received from the claimant complaining of the drainage problems. He stated that he requested his bridge department to conduct a drainage analysis, found that in excess of 52 acres drain into claimant’s restaurant and parking areas and that, considering the slope of Route 88, if there was a lot of rain, the water would come down like a river and the drains would probably not be sufficient to prevent water accumulation on the property of the supper club. Further, at an earlier date he recommended to the claimant that he install a grate across the front of the driveway to the restaurant parking lot in order to provide for drainage before the water flows onto the parking lot.
The evidence in this claim substantiates the allegations that claimant’s property may have excessive water flowing into the entrance and onto the parking lots. The property is at the bottom of a drainage area of 52.66 acres with Route 88 and hillsides surrounding the property. Respondent maintains Route 88 to the best of its ability. Claimant has an obligation to attempt to reduce the flow of water by constructing additional drainage structures at the entrance to his parking lots and this may alleviate the problem of excessive water which deteriorates the parking lots. The Court is not convinced that water alone caused the asphalt to deteriorate. The asphalt appears to have deteriorated due to its age as well as the water problems. The Court also finds that there are many contributing factors to the condition of excessive water flowing onto claimant’s property besides the water coming down off Route 88, some of which water may come down the hillside and ditch or road leading to the rear of claimant’s upper parking lot. Thus, the Court is of the opinion that the claimant has failed to establish negligence on the part of the respondent by a preponderance of the evidence and that such negligence proximately contributed to the damages suffered by claimant.
In accordance with the findings of the Court as stated herein above, this claim must be denied.
Claim disallowed.
Former Judge Hanlon participated in the hearing but not in the decision of this claim.